IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | CRIMINAL NO EP-04-CR-2091KC |
| v. | § | |
| FLORITA CEDRO TOLENTINO,<br>NOEL CEDRO TOLENTINO,<br>ANGELICA TOLENTINO, | § | |
| | | |
| UNITED STATES OF AMERICA, | § | CRIMINAL NO EP-04-CR-2092KC |
| v. | § | |
| NOEL CEDRO TOLENTINO, | § | |
| | | |
| UNITED STATES OF AMERICA | § | CRIMINAL NO. 04-CR-2093KC |
| v | § | |
| NOEL CEDRO TOLENTINO, | § | |

## GOVERNMENT'S MOTIONS IN LIMINE ON RETRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the United States of America, by and through the United States Attorney for the Western District of Texas, and moves this Honorable Court for an order granting the Government's Motions in Limine On Retrial as set forth below.

On March 19, 2007, the Court declared a mistrial in the trial on the above-referenced causes. On April 30, 2007, the Court entered an order terminating all pending motions, which would include the in limine motions previously filed by the Government. Therefore, the Government files these in limine motions seeking orders:

1. Providing for the Court to conduct all voir dire examination in this cause, and directing counsel to submit any proposed voir dire questions or areas of questions to the Court for review outside the presence of the jury;

2.  Excluding all defense exhibits not submitted to the Government within the time limit imposed by the Court's prior Scheduling Order;

3.  Restricting counsel from questioning or arguing certain evidence and defense theories, including:

      A.    Any information contained in the defense exhibits;

      B.    Any reference to potential sentences or consequences resulting from conviction;

      C.    Restricting any reference to the events of September 11th;

      D.    Prohibiting counsel from arguing or eliciting evidence in connection with a spoliation, due process or selective prosecution defense;

      E.    Prohibiting counsel from arguing or eliciting evidence in connection with an ignorance or mistake of law defense, and testimony on the law and its interpretation;

      F.    Prohibiting irrelevant evidence and/or evidence without factual foundation, including irrelevant and incomplete defenses;

      G.    Restricting and/or setting limits upon the introduction of character evidence;

      H.    Disallowing evidence of specific acts of good character;

      I.    Prohibiting cross-examination as to immigration and other benefits given to witnesses as a result of the delays in this case; and

      J.    Prohibiting reference to the prior trial in this matter which ended in a mistrial.

4.  Setting the order and scope of cross-examination;

5.  Preventing counsel from arguing for jury nullification;

6.  Restricting evidence of motive or good faith in connection with certain counts in the indictment;

7.      Restricting certain evidence in connection with the background of the defendants.

I.      **THE COURT SHOULD CONDUCT ALL VOIR DIRE**

The Government requests the Court to conduct all voir dire examination in this cause.  Often counsel uses voir dire as a method of conducting an extra opening statement, attempting to put their theory of the case or facts before the jury.  This is improper and is not designed to "ferret out actual bias" which is the purpose of voir dire. ***Dennis v. United States*, 339 U.S. 162, 168 (1950).**

Examination of the panel by counsel is not mandated; rather, it may only be done with permission of the Court.  **Fed. R. Crm. P. 24(a)**.  A trial judge has broad discretion over the manner in which voir dire is conducted. ***United States v. Bieganowski*, 313 F.3d 264, 272-73 (5th Cir. 2002); *United States v. Rowe*, 106 F.3d 1226, 1227-28 (5th Cir. 1997).**   A decision to refuse attorney questioning will only be reviewed for abuse of discretion, and a trial court's decision to do so will be upheld as long as the panel is sufficiently questioned to allow counsel to exercise a reasonably knowledgeable challenge to unqualified jurors. ***United States v. Beckner,* 69 F.3d 1290, 1291 (5th Cir. 1991).**

In this case, there are numerous defense counsel all seeking to place the same or similar stories before the jury which, conceivably, could take hours during the voir dire process.  The Government respectfully submits appropriate voir dire of the panel may be met by the Court propounding appropriate questions which have been filed in writing by the parties.  Should any follow up questions be necessary, a conference at the bench to submit them to the Court should be conducted.  **Fed. R. Crim P. 24(a)(2)(B)**.

**II.    DEFENSE EVIDENCE SHOULD BE EXCLUDED AS DEFENDANTS HAVE FAILED TO COMPLY WITH THE FEDERAL RULES OF CRIMINAL PROCEDURE AND THE COURT'S SCHEDULING ORDER**

On April 27, 2006, and prior to the first trial in this case, the Court issued a Scheduling Order requiring defendants to supply discovery on or before June 16, 2006. Defendants Noel Cedro Tolentino and Angelica Tolentino have provided no discovery. Defendant Florita Tolentino did provide access to certain documents on June 16, 2006 as required; however, defendants continued to designate certain items as evidence even during the prior trial. Since the date of the mistrial, defendants have not supplied any documents or other evidence to the Government.

The Government seeks to bar defendants' introduction of any evidence not provided prior to the June 16, 2006 deadline or, at the very least, no supplied prior to the declaration of the mistrial. Such "eleventh hour" evidence should be excluded, unless excusable neglect is shown. *See, United States v. Levy-Cordero*, **67 F.3d 1002, 1015 (1st Cir. 1995)** (hearing appropriate outside presence of jury to determine admissibility of last minute alibi defense).

**III.   EXCLUSION AND RESTRICTION OF CERTAIN EVIDENCE AND THEORIES**

This portion of the motion is related to certain potentially inadmissible evidence and is brought for the purpose of assuring compliance with Rule 103(c) of the Federal Rules of Evidence which provides:

> In jury cases, proceedings shall be conducted, to the extent practicable, as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury.

As the Supreme Court Advisory Committee points out: "This subdivision proceeds on the supposition that a ruling which excludes evidence in a jury case is likely to be a pointless procedure if excluded evidence nevertheless comes to the attention of the jury." *Bruton v. United States*, **389 U.S. 818 (1968)**. Based upon the following considerations, the Government is requesting the Court grant this motion, thereby

creating a vehicle by which to comply with Rule 103(c) of the Federal Rules of Evidence, and prevent the possibility of jury prejudice through its exposure to such inadmissible evidence.

### A.    Information Contained in Defense Exhibits

As defendants have failed to produce their evidence in a timely manner, or in some cases any evidence whatsoever, in compliance with this Court's Order and the Criminal Rules of Procedure, counsel should be precluded from mentioning the existence or the facts contained in any proposed defense exhibit during cross-examination or opening statements if the requested exclusion is granted by this Court.  Comment by counsel at any time during the trial would be inappropriate.

### B.    Potential Sentence or Consequences for Offense Charged

During the first trial, defendants sought and received permission to cross-examine at least one witness (Maria Aurora Malacon) concerning the maximum imprisonment sentence she might have received had she been indicted under the same indictment.  Such cross-examination, however, is inappropriate and impermissible. Moreover, none of the witnesses scheduled to testify in the retrial could have been indicted for the criminal offenses with which defendants now are charged in the main indictment.

As has been recognized by in the Fifth Circuit, a jury "should not be concerned with punishment in any way.  It should not enter [a jury's] consideration or discussion." **Fifth Circuit Pattern Jury Instruction 1.20.**   If it is not appropriate for a jury's consideration, discussion or evidence as to specific punishments for any crime should not be placed before it.

The Government asks the Court to enter an order prohibiting defense counsel from mentioning to the jury that any of the crimes with which defendants are charged, or with which a witness was charged, is a  felony which carries *a specific sentence or*

*any jail time whatsoever*, be it on direct or cross-examination, or in argument.  An attorney's attempt at arguing the severity of possible punishment is impermissible, as it is an indirect attempt at arguing jury nullification.  ***See, e.g., United States v. Manning*, 79 F.3d 212, 219 (1st Cir.),** ***cert.* denied**, **519 U.S. 853 (1996);** ***United States v. McDonald*, 933 F.2d 1519, 1526 (10th Cir.),** ***cert.* denied, 502 U.S. 897 (1991)**.

Comments such as "taking away defendant's freedom," "sending them to jail," "taking them away from their family," or even any statement as to the possible immigration or professional consequences they might suffer serve no purpose in this trial.  The mention of such facts serves only to put before the jury the matter of what sentence or consequences a defendant might receive and, when it occurs, can only be intended to arouse the jury's sympathy.  As the Court well knows, "the jury has no sentencing function and should reach its verdict without regard to what sentence might be imposed."  ***Rogers v. United States*, 422 U.S. 35, 40 (1975).**

Additionally, in this case, several of the consolidated defendants have pled guilty to charges arising from the crimes with which these defendants are charged.  As previously mentioned, however, these witnesses could not have been charged under the counts of the new Second Superceding Indictment.  Cross-examination of these witnesses regarding their potential sentences, had they not cooperated at an early stage, "would likely disclose to the jury that a particular offense carries a particular penalty.  Such disclosure would inevitably prompt the jurors to speculate about whether a particular defendant will be subject to a particular penalty if convicted."  ***United States v. Cook*, 776 F. Supp. 755, 757 (S.D.N.Y. 1991).**

This is not to say that direct or cross-examination as to the fact a witness might have gotten a reduced sentence or might not have been charged due to cooperation is barred, just the specific amount of incarceration carried by any particular count is

inappropriate and inadmissible.

In *Cook*, *supra*, the district court granted the government's motion in limine, which requested that defense counsel be prohibited from cross-examining witnesses in a "manner calculated to alert the jury to the penalties defendants face on trial." *Id.* at 756. The rationale for the court's ruling was sound:

> The function of the jury in a criminal trial is to determine guilt or innocence based upon an impartial consideration of the evidence, unswayed by emotion, fear or prejudice. *See Taylor v. Kentucky*, **436 U.S. 478, 483-85, 98 S. Ct. 1930, 1933-35, 56 L. Ed. 2d 468 (1978);** *United States v. Umans,* **368 F.2d 725 (2d Cir. 1966).** Where the jury is permitted to speculate concerning a defendant's possible punishment, a jury cannot properly perform that function.

*Id.* at 757; *see United States v. Walton*, **552 F.2d 1354, 1364 (10th Cir. 1977)** (exclusion of cross-examination concerning the witness' knowledge of the maximum penalty for the crime charged and that the witness' motive for testifying was to save prison time upheld).

Moreover, if defendants are allowed to cross-examine on specific sentences or the maximums faced, the Government must then be allowed to question the witness concerning the impact of the sentencing guidelines. Further, the Court would be called upon to conduct a discussion with the jury on sentencing, which would, in effect, remove the issue of sentencing from the exclusive province of the Court and distort the jury's deliberations. *See United States v. Frappier*, **807 F.2d 257, 261-62 (1st Cir. 1986),** *cert. denied*, **481 U.S. 1006 (1987).**

Finally, any cross-examination of witnesses regarding potential sentences would elicit only speculation by the witness. As such, this questioning would not only be improper for the reasons discussed above, such questioning could also be seriously misleading. Consequently, the Government asks that the Court exclude evidence regarding the potential sentences the defendants are facing.

**C.**     **Questions or Comments By Counsel Concerning September 11th**

Due to the nature of this case, the Government is concerned defendants may attempt to question witnesses concerning the State Department"s and/or Department of Homeland Security's (formerly the Immigration & Naturalization Service) handling of the visas issued to the September 11[th] hijackers.  Such questions have no purpose other than to inflame the jury by the mere mention of the horrific attack.   The Government submits such evidence is irrelevant to the issues in this case.

"Relevancy is not an inherent characteristic of any item of evidence, but exists only as a relation between an item of evidence and a matter properly provable in a case." **United States v. Huddleston, 485 U.S. 681, 689 (1988)**.  The Court has broad discretion in determining relevancy and evidentiary issues.  Only when there appears to be a clear abuse of discretion will the Court of Appeals overturn the district court's evidentiary rulings.  **United States v. Wasman, 641 F.2d 326 (5th Cir. 1981); United States v. Kelly, 888 F.2d 732, 743 (11th Cir. 1989).**

Assuming arguendo the relevance of the evidence, the Government further submits it should be precluded under Federal Rule of Evidence 403, as the probative value is substantially outweighed by the danger of confusion of the issues and misleading the jury, and because it would cause undue delay.  **Fed. R. Evid. 403**.

Under Rule 403, the Court has wide discretion in determining the relevancy and materiality of evidence.  A trial court's preclusion of evidence will be overturned on appeal only upon a clear showing of an abuse of discretion.  **United States v. Cole, 670 F.2d 35, 37-38 (5th Cir. 1982); United States v. Castell, 584 F.2d 87, 89 (5th Cir. 1978), cert. denied, 440 U.S. 925 (1979)**.  "The jury's determination of guilt or innocence should be based on evidence relevant to the crime charged.  When the trial judge determines that the proffered evidence presents a danger of confusing the issues or misleading the jury and this danger outweighs its probative value, he should exclude

8

the evidence." *United States v. Castell*, **584 F.2d at 89** (quotations and citations omitted).

Here, the disputed evidence does not reflect on defendants' intent, state of mind or actions. Rather, the evidence sought to be introduced goes solely to the Government's conduct in an entirely different matter; conduct which is irrelevant to the charges in this case. Under this line of questioning, defendants would only be seeking to put the Government on trial – which, unquestionably, is irrelevant to the criminal violation of which defendants stand indicted. It would confuse and sidetrack the jury onto collateral matters. Any venture down this garden path would do more than just lead the jury astray, as the Government would have to rebut with a long lesson in the law and internal working of the Department of State, Department of Homeland Security, and Immigration & Naturalization Service. As such, the evidence should be excluded. *United States v. Dennis*, **625 F.2d 782, 796 (8th Cir. 1980)** (confusion of issues warrants exclusion of evidence if its admission would lead to litigation of collateral issues).

Where a jury has "sufficient information to make a discriminating appraisal of the witness' motives and bias," limitation of wide-ranging, marginally relevant matters is not an abuse of discretion. *United States v. Fitzgerald*, **579 F.2d 1014, 1021 (7th Cir. 1978), cert. denied, 439 U.S. 1002 (1978);** *United States v. Campbell*, **426 F.2d 547, 550 (2d Cir. 1970).**

**D.**   **The Court Should Exclude Testimony or Evidence Concerning The Manner In Which The Investigation Was Conducted and/or Alleged Motive Behind The Criminal Action**

The Government believes defendants may attempt to introduce evidence concerning the evolution, basis and Government's manner of conducting the criminal investigation and prosecution in this case. It is hard to envision its relevancy outside of supporting a selective prosecution or a due process/spoilation defense. For the

reasons discussed herein, though, these defenses are not available in this case. Therefore, the Government respectfully submits the anticipated evidence is irrelevant and should be barred.

### 1.  A Due Process/Spoliation Defense Is Not Available

One possible ground which defendants may proffer is that the testimony goes to a "spoliation" or due process defense.  This defense, however, is not available in this case.  A due process or spoliation defense generally is raised in "sting operations" or entrapment and contraband cases.  *See, e.g., United States v. Moore*, **916 F.2d 1131 (6th Cir. 1990);** *United States v. Zambrano*, **776 F.2d 1091 (2d Cir. 1985);** *United States v. Alexandro*, **675 F.2d 34 (2d Cir. 1982),** *cert. denied*, **459 U.S. 835 (1982).** Although some courts hold a due process defense should be rejected per se on a separation of powers ground,[1] they also have acknowledged outrageous governmental investigative conduct may, in extreme circumstances, violate the Due Process Clause. *United States v. Alexandro*, **675 F.2d at 39-40;** *United States v. Asencio*, **873 F.2d 639 640-41 (2d Cir. 1989).** As noted in *United States v. Duncan, supra*, the Government has broad license in conducting investigations:

> Not only have we questioned the validity of the doctrine of outrageous government conduct, we have also observed that "due process grants wide leeway to law enforcement agencies in their investigation of the crime.  Assuming that no independent constitutional right has been violated, governmental misconduct must be truly outrageous before due process will prevent conviction of the defendant."

No valid claim to a violation of such individual, independent constitutional right has been or can be made in this case.  In any event, the challenge which defendants may seek to make at trial is now barred.

Moreover, the defense of outrageous government conduct is not for the jury to

---

[1]

*See*, *United States v. Miller*, **891 F.2d 1265, 1271-73 (7th Cir. 1989) (Easterbrook, J., concurring);** *United States v. Miceli*, **774 F. Supp. 760, 769 (W.D.N.Y. 1991).**

consider, but must be decided by the trial court; therefore, to place the testimony before the jury would be improper.   A due process attack on the investigation and indictment is a matter to be litigated pre-trial.  *United States v. Duncan*, **896 F.2d at 274;** *United States v. Nunez-Rios*, **622 F.2d 1093, 1098 (2d Cir. 1980)**.  No such motion was filed by any defendant prior to trial.   Defendants' failure to raise an outrageous government conduct or due process claim in a pretrial motion pursuant to Rule 12(b)(2) constitutes a waiver of the claim.  *United States v. Henderson-Durand*, **985 F.2d 970, 973 cert. denied, 114 S. Ct. 164 (1993);** *United States v. Nunez-Rios*, *supra; United States v. Duncan, supra*.   It may, thus, be procedural error to submit that legal issue to the jury through presentation of evidence in its presence.

### 2.   A Selective Prosecution Defense Is Not Available.

Alternatively, defendants may seek to present some sort of quasi-selective prosecution defense.   It is well-settled in order to show selective prosecution, a defendant has the "heavy burden" of meeting two requirements.  First, he must make a prima facie showing he was singled out for prosecution, where others similarly situated who have committed the same acts have not been prosecuted.  Second, he must demonstrate the government's prosecution of him is constitutionally invidious, such as being motivated by impermissible motives such as racial or religious discrimination or his exercise of constitutional rights.   *United States v. Lichenstein* **1519, 1523 (11th Cir. 1986) (per curium), cert. denied, 481 U.S. 1071 (1987).** Defendant can meet neither test.  Moreover, such a claim must first be litigated pre-trial to determine if there is merit, prior to being placed before the jury.

Herein, the scales decisively weigh on the side of exclusion.  The areas in which defendant may seek testimony — such as they cannot see why they are being prosecuted when they were doing a service to the community by providing teachers — do not concern the issues in this case, the intent of the defendant, or attack any

evidence to be offered in the trial.  In short, it is not probative and allows the jury to draw unsubstantiated inferences concerning the conduct of the government investigation.  If counsel is allowed to proceed with this line of defense, the Government will, understandably, seek to introduce evidence to rebut the defendants' allegations and insinuations.  In the end, this trial might devolve into a lengthy dispute about the Government's investigation into a defendant's activities, instead of the true issues in the case.  Aside from wasting valuable time and judicial resources, such a clash will operate to confuse and mislead the jury with what, essentially, is a red herring.

As such, prior to presenting or commenting on any such evidence, the Government requests this Court to require defendants to (1) proffer the substance of the testimony s/he expects to elicit, and (2) to submit a valid, non-selective prosecution reason for seeking such testimony.

### E.     The Court Should Exclude Any Evidence or Testimony Involving A Defense of Ignorance of the Law or Mistake of Law

Defendants, herein, may also seek to defend against the charges based on an alleged claim of ignorance or mistake of law.  However, absent a specific directive from Congress imposing a requirement defendant intentionally violated a known legal duty, the "general rule deeply rooted in the American legal system, is that ignorance of the law or a mistake of law is not defense to criminal prosecution."  *United States v. Blair, supra,* **54 F.3d at 643,** *quoting Cheek v. United States,* **498 U.S. 192, 199 (1991);** *Lambert v. California,* **355 U.S. 225, 228 (1958)** (internal quotations omitted); *Ratzlaf v. United States*, **510 U.S. 135, 149 (1994)**.

Even if a defendant were to argue they believed the teachers were entitled to a visa and to be admitted into this country because of the prior application, it still would not be a defense.  *United States v. Merkt,* **764 F.2d 266, 273 (5th Cir. 1985)** (defendant's belief that the aliens' genuine qualifications for political asylum entitled

them to legal status prior to such filing was based on a mistake of law and could not constitute a defense to alien smuggling offense).

Based upon the foregoing, the Government respectfully requests the Court prohibit counsel from arguing defendants' mistake regarding or ignorance of the law, including any belief the teachers might be entitled to status based on a prior school district's petition after the offer of employment was withdrawn.

### 1.    Testimony Concerning the Law

The defendants have intimated an intention to enter testimony concerning the "grey areas" of the law. They may well attempt to do so through cross-examination of a Government witness, Peter D. Williamson and/or witness Betty Mappes of Citizenship and Immigration Services.

The issues in this case revolve around the parties' conduct, knowledge and intent. *See, e.g., United States v. Ortland*, 109 F.3d 539, 544-545 (9th Cir.)(attorney's testimony largely irrelevant because he could not speak to what defendant believed agreement provided and what defendant told investors). The courts have long supported the exclusion of expert testimony on issues of law. *See, e.g., United States v. Messner*, 107 F.3d 1448, 1454 (10th Cir.1997) (an expert may not state "his view of the law governing the jury's verdict"); *United States v. Kingston*, 971 F.2d 481, 486 (10th Cir. 1992)("[E]ven expert witnesses are not permitted to give opinions as to what the law is"); *United States v. Vreeken*, 803 F.2d 1085, 1091 (10th Cir. 1986)("As a general rule, questions of law are the subject of the court's instructions and not the subject of expert testimony"), *cert. denied*, 479 U.S. 1067 (1987); *United States v. Jensen*, 608 F.2d 1349, 1356 (10th Cir. 1979)("an expert witness cannot state legal conclusions by applying law to the facts") (en banc), *cert. denied*, 488 U.S. 1008 (1989); *see also, United States v. Hudson*, 813 F. Supp. 1482, 1489-90 (D. Kan. 1993)(attorney not allowed to give his opinion on issue of law). The

rationale for this exclusion was set forth in **Specht v. Jensen, 833 F.2d 805 (10th Cir.**

**1988)**:

> [I]t is axiomatic that the judge is the sole arbiter of the law
> and its applicability.  As one scholar noted:
>
> A witness cannot be allowed to give an opinion on a
> question of law . . . .  In order to justify having courts resolve
> disputes between litigants, it must be posited as an *a priori*
> assumption that there is one, but only one, legal answer for
> every cognizable dispute.  There being only one applicable
> legal rule for each dispute or issue, it requires only one
> spokesman of the law, who of course is the judge. . . .  To
> allow anyone other than the judge to state the law would
> violate the basic concept.  Reducing the proposition to a
> more practical level, it would be a waste of time if witnesses
> or counsel should duplicate the judge's statement of the law,
> and it would intolerably confound the jury to have it stated
> differently.
>
> *Stoebuck, Opinions on Ultimate Facts:  Status, Trends, and
> a Note of Caution, 41 Den.L.Cent.J. 226, 237 (1964)*
> (footnote omitted).
>
> \*   \*   \*
>
> [T]estimony which articulates and applies the relevant law
> . . . circumvents the jury's decision-making function by
> telling it how to decide the case.
>
> \*   \*   \*
>
> [W]hen the purpose of testimony is to direct the jury's
> understanding of the legal standards upon which their verdict
> must be based, the testimony cannot be allowed.  *In no
> instance can a witness be permitted to define the law of the
> case.*

**Id.** **at 807-10** (emphasis added).

The testimony outlined above must be excluded as inappropriate under the law.

**See, e.g., United States v. Daly, 756 F.2d 1076, 1083 (5th Cir. 1985)**(level of

uncertainty of the applicable law must approach legal vagueness before expert

testimony can be introduced on the issue); **accord, United States v. Burton, 737 F.2d**

**439, 443-44 (5th Cir.1984).**

Additionally, the testimony is inappropriate under Federal Rules of Evidence 702

and 704.  **See A.E. by and through Evans v. Independent School District No. 25, 936**

14

**F.2d 472, 476 (10th Cir. 1991)**(Rule 704(a) allows an expert witness to testify regarding an ultimate factual issue, but does not allow an expert to state legal conclusions); **see generally, Specht, 853 F.2d at 807-10**. Permitting such testimony would be tantamount to allowing the witnesses to testify about whether the defendants are guilty or not guilty, and would clearly be improper. **See Hudson, 813 F. Supp. at 1489-90; accord, United States v. Klaphake, 64 F.3d 435, 438-39 (8th Cir.1995)** (attorney not allowed to testify about legality of trust arrangement in tax fraud case). Thus, "although an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts." **United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir.), cert. denied, 502 U.S. 813 (1991); Marx Co., Inc.  v. Diners' Club, Inc., 550 F.2d 505, 510 (2d Cir.)** (error to allow attorney to give conclusions as to legal significance of facts adduced at trial), **cert. denied, 434 U.S. 861 (1977)**.  This proposition is true, no matter how the expert testimony may be labeled.  **See id.** at 1295 (ultimate legal conclusion not admissible simply because it is presented in terms of industry practice).

The Court should prohibit the defendants from arguing or offering evidence that the law governing H1-B status and visas, including the portability provisions thereof if such becomes relevant, is vague or ambiguous, resulting in confusion in the standard of conduct required for compliance.  Allowing defendants to represent to the jury, through "expert" testimony or otherwise, that the relevant law is vague and ambiguous would usurp the Court's function as the determiner of the law, would unnecessarily confuse the jury, would unfairly prejudice the government, and would delay the proceedings.  Consequently, such evidence and argument should be excluded under Federal Rule of Evidence 403.

## 2.    Interpretation of Documents

The defendants may attempt to offer legal interpretations of the agreements and

documents through direct and/or cross-examination testimony.  Testimony regarding the reasonableness of anyone's interpretation of the law should be excluded.  *See United States v. West*, 22 F.3d 586, 598-600 (5th Cir. 1994)(expert testimony regarding reasonableness of interpretation of the provision of Texas Homestead Act would not have assisted the jury).

The focus of the jury's decision in this case will be whether the defendants committed criminal acts.  These questions will be answered by reference to the parties' conduct, *e.g.*, whether the requirements of the H1-B were fulfilled or whether they were breached when the defendants brought the teachers into the United States knowing there to be no jobs available.  No expert or other witness (other than the defendants themselves) can testify about the parties' conduct, because no expert has personal knowledge of that conduct.

The Court should exclude all of the above-described evidence, as it is all improper under Rule 704 and clear legal precedent.  Simply stated, the defendants should not be allowed, through the guise of "expert" testimony, to instruct the jury about the law or the conclusions the jury should draw from the evidence presented at trial.

**F.    Irrelevant evidence and/or evidence without factual foundation**

Although the defendants are allowed to present their theory of defense to the jury, "some relevant factual basis for the defense should exist under Federal Rules of Evidence 401 and 402 before evidence or testimony is offered."  *Thompson*, 25 F.3d at 1564; *see also, United States v. Wiman*, 77 F.3d 981, 985 (7th Cir. 1995) (defense must be supported by law and have some foundation in the evidence).  A defendant has no right to present witnesses or cross-examine adverse witnesses about facts which are not of consequence to the determination of the case.  *Wiman*, 77 F.3d at 985.  Stated another way, "defendants are not entitled to present evidence which is irrelevant for any purpose other than to provoke the finder of fact to disregard the law."  *United*

16

*States v. Lucero*, **895 F. Supp. 1421, 1426 (D. Kan. 1995)(J. Theiss)**.  As the Eleventh Circuit held:

> Because the jury enjoys no right to nullify criminal laws, and the defendant enjoys a right to neither a nullification instruction nor a nullification argument to the jury, the potential for nullification is no basis for admitting otherwise irrelevant evidence.

*United States v. Funches*, **135 F.3d 1405, 1409 (11th Cir.),** *cert. denied*, **141 L. Ed. 2d 754 (1998) (***citing, Zal v. Steppe*, **968 F.2d 924, 930-31 (9th Cir. 1992));** *United States v. Gorham*, **523 F.2d 1088, 1097-98 (D.C. Cir. 1975);** *United States v. Horsman*, **114 F.3d 822, 829 (8th Cir. 1997),** *cert. denied*, **139 L. Ed. 2d 645 (1998).**

Federal courts have held that "it is appropriate to require a defendant to submit an offer of proof to establish whether the evidence is sufficient as a matter of law to support the proffered defense.  The constitutional right of the defendant to a fair trial is not diminished if the defendant is precluded from raising defenses for which she can present no supporting evidence at all." *United States v. Brodhead*, **714 F. Supp.  593, 596 (D. Mass.1989)**(precluding political necessity argument, Nuremberg defense, and crime prevention defense), *citing, United States v.  Seward*, **687 F.2d 1270, 1273 (10th Cir. 1982),** *cert. denied*, **459 U.S. 1147 (1983)**.

**1.     Similar contracts or arrangements.**

From representations defendants have made, it appears defendants intend to present testimony to prove the validity of their actions by introducing evidence of other arrangements with teachers and school districts "similar" in many respects to the arrangements and actions in this case.  In other words, the defendants may attempt to offer the defense that because other recruiters or administrators operate in the same manner, or that similar transactions of their own were legal, the actions of the defendants in the charged instances were legal.

Such evidence is not relevant to the issues in this case and will simply allow the

defendants to confuse the jury by entangling them in numerous collateral issues.  That other similar (as yet unchallenged or uncharged) arrangements exist, cannot be the foundation for an opinion that they are legal and proper.  More importantly, however, other similar arrangements are not at issue in this case.  Instead, the issues in this case concern only the recruiting of teachers for Brownsville Independent School District (BISD), Ysleta Independent School District (YISD), Socorro Independent School District (SISD), El Paso Independent School District (EPISD), and South San Antonio Independent School District (SSAISD).  That should be the focus of the trial.

It is axiomatic that a trial court has broad discretion in determining the admissibility of evidence.  Additionally, the trial court has a "duty to exercise such control over the scope of the examination as is necessary to prevent the parties from unduly burdening the record with cumulative or irrelevant matters."  *United States v. Hill*, 589 F.2d 1344, 1351 (8th Cir.), *cert. denied*, 442 U.S. 919 (1979); *accord, United States v. Walton*, 552 F.2d 1354, 1364 (10th Cir.), *cert. denied*, 431 U.S. 959 (1977).  Thus, a trial court has "wide discretion to exclude proffered evidence that is collateral, rather than material, to the issues in the case."  *United States v. Scopo*, 861 F.2d 339, 346 (2d Cir. 1988), *cert. denied*, 490 U.S. 1048 (1989):

> [T]he Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses:  it guarantees him "compulsory process of obtaining *witnesses in his favor.*"  U.S. Const. Amdt 6 (emphasis added).

*United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).  Simply put, the Sixth Amendment only protects the defendants' right to offer the testimony of witnesses whose testimony would be relevant and material.  *Id.* at 867, 873.  Thus, the Court can exclude testimony that is not relevant and material to the crimes with which the defendants are charged, without violating the Sixth Amendment.

Furthermore, even if such evidence were even remotely relevant, its introduction

would confuse the jury and prolong the trial.  *See* **Fed. R. Evid. 403**.  Again, the jury's deliberations focus will be on the parties' conduct, *e.g.*, whether defendants committed visa fraud in connection with the acquisition of certain H1-B visas.  The trial court should exercise its discretion and exclude any and all evidence that defendants may have placed teachers in other schools, not subject to this indictment; that is they allegedly had legitimate contracts or arrangements with other school districts besides those charged in the indictment or other "similar" arrangements are allegedly legitimate and legal.  The legitimacy of these other contracts is not at issue, and their professed validity would be absolutely irrelevant to the issues concerning the contracts between the charged school districts/teachers and the defendants.  Consequently, this evidence is collateral to the case at hand.

A defense must be one cognizable under the law, and must be a defense to the charges brought.  *See **United States v. Zang**, **703 F.2d 1186, 1195 (10th Cir. 1982),** **cert. denied**, **464 U.S. 828 (1983)***.  "A defendant may not seek to establish his innocence . . . through proof of the absence of similar acts on specific occasions." ***United States v. Scarpa**, **897 F.2d 63, 70 (2d Cir.),** **cert. denied**, **498 U.S. 816 (1990)**.* Said another way:  evidence that a defendant has, on occasion, performed lawful acts does not establish the lawfulness of another act.  *See **United States v. Burke**, **781 F.2d 1234, 1243 (7th Cir. 1985); **United States v. Glasser**, **773 F.2d 1553, 1559 (11th Cir. 1985)***("the fact that appellant did not commit other similar offenses does not tend to prove that she did not commit the ones at issue in this case"); ***United States v. McGuinness**, **764 F. Supp. 888, 896 (S.D.N.Y. 1991)*** ("The refusal of bribes on specific occasions is not admissible in evidence to prove the character of the accused").

Evidence that Omni, Multicultural, and/or the Tolentinos had allegedly legitimate contracts with individuals and/or school districts other than those charged, or that they engaged in "similar arrangements" would ultimately derail this case into collateral "mini

trials" in which the Government, in cross-examination and rebuttal, would have to question, if not disprove, the validity and legality of these unrelated contracts and "similar arrangements."    Simply put, allowing the defendants to introduce such evidence would "require delving into particular transactions and events that are far afield from this prosecution," and would pose "the substantial risk of permitting the trial to degenerate into an unfocused presentation of facts and testimony that would confuse the issues and mislead the jury." *United States v. Rewald*, **889 F.2d 836, 853 (9th Cir. 1989)**, *opinion amended*, **902 F.2d 18 (9th Cir.)**, *cert. denied*, **498 U.S. 819 (1990)**; *accord, Coast-to-Coast Stores, Inc. v. Womack-Bowers, Inc.*, **818 F.2d 1398, 1403 (8th Cir. 1987)**; *Terebecki*, **692 F.2d at 1350**; see also, Fed. R. Evid. 403.

Courts faced with similar evidentiary questions have had no hesitancy in ruling that collateral evidence is irrelevant under Rule 402, or even if relevant, excludable under the balancing test of Rule 403.    *See, e.g., Rewald*, **889 F.2d at 853** (in fraud case, court properly excluded evidence relating to CIA activities of defendant and other persons, even though defendant claimed CIA ordered him to spend investors' money extravagantly); *Scopo*, **861 F.2d at 346** (defendants charged with extortion in contracts under $2 million not allowed to introduce evidence that no extortion occurred in contracts over $2 million); *Coast-to-Coast*, **818 F.2d at 1403** (court properly excluded evidence regarding similar misrepresentations to other franchisees); *Burke*, **781 F.2d at 1242-43** (defendant not allowed to introduce prior relations with FBI to bolster defense that he was feigning extortion to elicit damning information for FBI); *United States v. Miller*, **725 F.2d 462, 468 (8th Cir. 1984)**(court denied admission of evidence regarding validity of debt underlying fraudulent cattle transaction because it would divert attention from the crimes charged); *Zang*, **703 F.2d at 1195** (in fraud case, court ruled inadmissible evidence that federal pricing regulations for crude oil were confusing and vague); *Terebecki*, **692 F.2d at 1350** (court properly excluded evidence of another

transaction defendant claimed supported his defense of lack of intent); *Hill*, **589 F.2d at 1350-51** (court prohibited cross-examination of witness regarding other investigations of defendant's employer).

A particularly relevant case is *United States v. LeFevour*, **798 F.2d 977 (7th Cir. 1986)**, one of the many cases arising out of the Greylord judicial bribery scandal in Chicago.   In *LeFevour*, the judge was accused of taking bribes for the dismissal of certain cases. *Id.* **at 979**.   At trial, the defendant attempted to introduce evidence that proved he had a practice of dismissing cases on request, without receiving bribes for doing so. *Id.* **at 980**.   The district court did not admit this evidence, ruling that the probative value was outweighed by the potential for confusing the jury. *Id*.   Specifically, the district court found that defendant's proffered evidence bore only a tenuous relationship to the charges, because it only proved that the judge sometimes dismissed cases for other reasons than being bribed. *Id*.

Likewise, the allegedly legitimate contracts or "similar arrangements" at the various school districts would only prove that defendants and their co-conspirators sometimes entered into contracts that were not coverups for a smuggling or a wire fraud/mail fraud scheme.   Such evidence does not prove that the visas at issue in this case were legitimate.   Instead, such evidence steers the jury into tangential areas, obfuscating the material issues the jury must decide.

Accordingly, any evidence offered by the defendants about contracts or "similar arrangements" with school districts or vendors other than those charged is not only irrelevant, but even if such evidence had tenuous relevance, its probative value is outweighed by the potential of juror confusion and waste of time.   *See* **Fed. R. Evid. 403;** *Rewald*, **889 F.2d at 853** (Rule 403 recognizes that as the probative value of evidence decreases, the potential increases for it to be substantially outweighed by the dangers the rule identifies); *Coast-to-Coast*, **818 F.2d at 1403** ("Otherwise relevant

evidence may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of confusion of the issues or by considerations of waste of time"). The Court should therefore exclude such evidence from the trial of this matter.

### 2. Course and Scope of Employment

Herein, defendant Angelica Tolentino and/or Noel Tolentino also may attempt to rely on the defense that their participation occurred during the course and scope of their employment by Omni Consortium, Inc and/or Muticultural Professionals. However, a defense must be one cognizable under the law, and must be a defense to the charges brought. *See United States v. Zang*, **703 F.2d 1186, 1195 (10th Cir. 1982)**, *cert. denied*, **464 U.S. 828 (1983)**.

Under prevailing law, the fact they were acting within the course of their employment does not preclude a finding that they had the mens rea sufficient to be convicted of the charges against them. *See, e.g., United States v. Hernandez-Guardado*, **228 F.3d 1017, 1023 (9th Cir. 2000)**.

### G.   The Court should limit the number of character witnesses each defendant presents, whether through cross-examination or direct examination.

In the case at hand, the government suspects that the defendants will attempt to offer numerous character witnesses in their defense, either through direct or cross-examination. In other words, counsel may attempt to cross-examine school administrators concerning their opinion as to the character of the defendant and the services they provided, and then, during the defense case, call character witnesses of their own.

It is well-settled that the Court may limit the number of witnesses permitted to testify to a single fact, and the extent to which cumulative testimony may be received. *Petersen v. United States*, **268 F.2d 87, 88 (10th Cir. 1959)**; *see also, United States v. Rising*, **867 F.2d 1255, 1258 (10th Cir. 1989)**; *Sanseverino v. United States*, **321 F.2d 714, 716 (10th Cir. 1963)**. Even when the defense is that the defendant lacked

the requisite intent, even limiting the defendant to one character witness is within the Court's discretion. *Petersen*, **268 F.2d at 88**. The Fifth Circuit typically limits a defendant to two character witnesses. *See, e.g., United States v. Gray*, **105 F.3d 956, 963 (5th Cir. 1997)**.

In sum, not only will such witnesses be cumulative, these character witnesses will lend little, if any, probative evidence concerning whether the defendants committed the crimes with which they are charged. Therefore, a limitation on their number is appropriate.

**H.    The Court should exclude evidence regarding specific acts of good character.**

Defendants should also be prohibited, on direct and/or cross-examination, from introducing evidence of specific acts of good character, including, but not necessarily limited to, evidence that they are good recruiters or placement agencies, and evidence that they did not commit similar acts of bribery or fraud on other occasions.

As the Court is aware, the consolidated Omni defendants are charged with various immigration fraud and smuggling crimes, as well as wire fraud and mail fraud schemes, interstate transportation in aid of racketeering, and money laundering. Although the defendants' conduct will be at issue, their abilities as recruiters administrators and the like will not.

Federal Rule of Evidence 404(b) proscribes the admission of character evidence to prove that a defendant has a bad character and acted in conformity therewith. *See* **Fed. R. Evid. 404(b);** *United States v. Hill*, **40 F.3d 164, 168 (7th Cir. 1994),** *cert. denied*, **514 U.S. 1029 (1995)**. From this prohibition follows the general principle that individual acts of good conduct are not admissible to prove good character, except in very limited circumstances. **Fed. R. Evid. 405(b);** *see United States v. Camejo*, **929 F.2d 610, 613 (11th Cir.)** (defendant's refusal to accept witness' offer to join narcotics business inadmissible), *cert. denied,* **502 U.S. 880 (1991)**. Consequently, evidence of

good conduct is not admissible to negate criminal intent.  **See Michelson v. United States, 335 U.S. 469, 477 (1948); United States v. Russell, 703 F.2d 1243, 1249, reh'g denied, 708 F.2d 734 (11th Cir. 1983).**  Thus, evidence that the defendants are good recruiters, administrators, or the like should not be admitted, whether offered through direct or cross-examination.  **See, e.g., United States v. Neighbors, 23 F.3d 306, 310 (10th Cir. 1994)**(evidence that defendant was asked to serve on board of substance abuse center excluded in drug trial); **United States v. Santana-Comacho, 931 F.2d 966, 967-68 (1st Cir. 1991)**(evidence of character as a good family man and a kind person inadmissible because not pertinent to illegal transportation of aliens charge); **United States v. Nazzaro, 889 F.2d 1158, 1168 (1st Cir. 1989)**(policeman's resume and commendations properly excluded as not pertinent to mail fraud charge); **United States v. Gravely, 840 F.2d 1156, 1164 (4th Cir. 1988)**(evidence about defendant's specific activities with March of Dimes inadmissible).

Similarly, proof of an assertion by a negative is inadmissible.  **See United States v. Beverly, 913 F.2d 337, 353 (7th Cir. 1990), cert. denied, 498 U.S. 1052 (1991).**  Therefore, evidence that the defendants acted lawfully or laudably on other occasions is irrelevant to their attempts at proving they acted lawfully on the occasions alleged in the Superceding Indictment.  **See United States v. Heidecke, 900 F.2d 1155, 1162 (7th Cir. 1990); United States v. Burke, 781 F.2d 1234, 1243 (7th Cir. 1985).**  In other words, "a defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions."  **United States v. Scarpa, 913 F.2d 993, 1011 (2d Cir. 1990); accord, Hill, 40 F.3d at 168** (defendant's failure to steal "test letters" not admissible to prove she did not steal letters as charged); **Beverly, 913 F.2d at 353** (testimony that witness never saw defendant sell cocaine inadmissible in drug prosecution).

In light of the above-cited case law, the defendants should not be allowed to

introduce evidence of specific acts of good character to show that they did not violate the immigration laws or commit fraud on specific occasions.

> **I.     The Court Should Prohibit Cross-examination As To Immigration And Other Benefits Given To Witnesses Since The Last Continuance Prior to the Previous Trial.**

At the last continuance granted on the eve of the prior trial, the Government informed the Court some witnesses had been brought in from the Philippines and some teacher witnesses' visas and other immigration documents were expiring.   The Government further informed the Court it would be necessary to grant work authorization documents, parole documents and other immigration benefits to allow the necessary witnesses to remain in the United States pending trial.   As the defendants were directly responsible for these benefits being obtained by the witnesses, cross-examination into them should be prohibited as a means of impeaching the witnesses.

> **J.   Existence of A Prior Case or Trial**

The Government further seeks to bar defendants from mentioning, for any reason, the existence of the prior trial which ended in mistrial, as such evidence is irrelevant to issues before the jury.

Federal Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible" at trial.   Generally, evidence introduced in a criminal trial should be strictly relevant to the specific offenses charged in the indictment.   ***Williams v. New York***, 337 U.S. 241, 247 (1949); ***United States v. Hall***, 653 F.2d 1002 (5th Cir. 1981); ***United States v. Allison***, 474 F. 2d 286 (5th Cir. 1973), ***cert. denied***, 419 U.S. 851 (1974).

**IV.   Limitation on Order and Scope of Cross-Examination**

As the Court well is aware, this case involves three (3) defendants being tried on three (3) consolidated indictments.   During the course and scope of the trial, witnesses may testify to only one or two of the defendants' involvement in the various

criminal acts.  The Government seeks a pretrial order limiting the order and scope of cross-examination.  That is to say, if a witness does not implicate a particular defendant, there is no need for that defendant to cross-examine the witness; concurrently, there is no reason for counsel to cross-examine a witness concerning the involvement of any other defendant but his own client.

The Sixth Amendment ensures a criminal defendant has the right to confront and cross-examine witnesses brought against him.  However, that right is not absolute. Simply put, a defendant's Sixth Amendment right of confrontation does not "guarantee cross-examination that is effective in whatever way and to whatever extent, the defense might wish." ***Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)**.  Rather, it is the literal right to confront witnesses during trial. ***California v. Green*, 399 U.S. 149, 157 (1970)**.  The Sixth Amendment is not violated when a trial judge imposes "reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety or interrogation that is repetitive or only marginally relevant." ***Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)**.

Restrictions on the scope of cross-examination rest within the sound discretion of the trial court. ***United States v. Wallace*, 32 F.3d 921, 926 (5th Cir. 1994); *United States v. Summers*, 598 F.2d 450, 460 (5th Cir. 1979)**.  Federal Rule of Evidence 611(a), grants the district court reasonable control over the method in which witnesses are interrogated to make the questioning more successful in bringing forth the truth, to prevent unnecessary time consumption, and to protect witnesses from being unnecessarily embarrassed or harassed. ***United States v. Martinez*, 151 F.3d 384, 390 (5th Cir. 1998)**.  "Rule 611(a) provides the district court with wide latitude to impose reasonable limits on cross-examination subject to the Sixth Amendment requirement that sufficient cross-examination be permitted to expose to the jurors facts from which they can draw inferences relating to the reliability of witnesses." ***Id.* at 390, citing**

**United States v. Restivo, 8 F.3d 274, 276 (5ᵗʰ Cir. 1993), see also United States v. Maloof, 205 F.3d 819, 829 (5ᵗʰ Cir. 2000)** (describing the wide latitude afforded the district court to place limits on cross-examination).

While cross-examination should not be unduly curtailed, no legal magic attaches to the words "confrontation" and "cross-examination." The only question is whether the defendant has an opportunity to confront witnesses against him or her. And so it should be – *the witnesses against him or her.* If a witness says nothing which implicates a particular defendant, there is no constitutional right to cross-examine that particular witness.

In **United States v. Andrews, 765 F.2d 1491 (11ᵗʰ Cir. 1985)**, Andrews took the stand and confessed to the crime. In his testimony, he did not even mention co-defendant Royster, let alone implicate him in any wrong-doing. The trial court denied counsel for Royster the opportunity to cross-examine Andrews. Royster appealed claiming a violation of his Sixth Amendment right of confrontation. In holding the trial court was within its discretion in doing so, the Court of Appeals stated:

> Appellant correctly asserts that the right to cross-examination is comprehended in the Sixth Amendment right to confrontation. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed. 347 (1974). This right is not, however, absolute or incapable of restriction. Its curtailment is within the discretion of the trial court. *Greene v. Wainwright,* 634 F.2d 272 (5ᵗʰ Cir. 1980), and is subject to the requirements of relevance and probative value. *Id.; Cloud v. Thomas,* 627 F.2d 742 (5ᵗʰ Cir. 1980). Moreover, the Sixth Amendment guarantees only the right to confront *adverse* witnesses, *United States v. Bujese,* 434 F.2d 46 (2d Cir. 1970); it does not guarantee the right to confront witnesses who testify not against but rather in favor of the party asserting the right. *Cf. United States v. Bujese, supra,* 434 F.2d at 48 (no right to cross-examine co-defendant who confessed on the stand and testified for appellant). In that portion of the trial addressed by this claim, Andrews does not appear to have been a witness adverse to either Royster or the other co-defendants.

**Andrews, 765 F.2d at 1501.**

The Government respectfully submits that, without some limitation on the order and scope of cross-examination, the trial has the potential for mushrooming into a more

lengthy proceeding than it already is, and would make an inefficient use of the parties', the court's, and jury's time, as well as the public's resources.  As the Supreme Court has announced:

> Our cases have consistently recognized the important role the trial judge plays in the federal system of criminal justice.  The judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. ... To this end, [the trial judge] may determine generally the order of in which the parties will adduce proof; [the judge's] determinations will be reviewed only for abuse of discretion.  Within limitations, the judge may control the scope of rebuttal testimony; may refuse to allow cumulative, repetitive, or irrelevant testimony; *and may control the scope of examination of witnesses.*  If truth and fairness are not to be sacrificed, the judge must exert substantial control over the proceedings.

*Geders v. United States.* **425 U.S. 80, 86-87 (1976)**(internal quotations and citations omitted); *United States v. Blum,* **62 F.3d 63, 67 (2d Cir. 1995)** (although the Fifth and Sixth Amendments guarantee criminal defendants the right to present a defense, that right must be balanced against a court's leave to set reasonable limits on the admission of evidence, *citing Delaware v. Van Arsdall,* **475 U.S. 673, 679 (1986)**)

**V.      The Court should exclude any evidence or argument offered for the purpose of encouraging jury nullification.**

While a jury is entitled to acquit a defendant on any ground, "a defendant is not entitled to inform the jury that it can acquit him on grounds other than the facts in evidence, i.e. a jury has the power of nullification but defense counsel is not entitled to urge the jury to exercise this power."  *United States v. Muse***, 83 F.3d 672, 677 (4th Cir.),** *cert. denied***, 138 L. Ed. 2d 186 (1996)**.  Therefore, a trial judge may block any attempts to "serenade a jury with the siren song of nullification" and may instruct the jury to the exclusion of jury nullification.  *United States v. Garcia-Rosa,* **876 F.2d 209, 226 (1st Cir. 1989),** *cert. denied***, 493 U.S. 1030 (1990);** *United States v. Sepulveda***, 15 F.3d 1161, 1190 (1st Cir. 1993),** *cert. denied***, 512 U.S. 1223 (1994)**.  The defendants should not be allowed to present irrelevant evidence to provoke the jury to disregard the law, nor should the defendants be allowed to argue jury nullification at

any point in the trial. *See, e.g., United States v. Sloan*, **704 F. Supp. 880, 884 (N.D. Ind.1989)** (jury nullification a proper issue for motion in limine; motion granted).

For instance, no longer relevant in this trial are the alleged attempts by defendants to find employment for the teachers once they arrived or the amounts of money allegedly spent by Omni Consortium to house, feed and transport the teachers around the country for a year. Likewise, any testimony concerning defendant Florita Tolentino's alleged co-signing of the Blue Pacific loans is irrelevant. The case now stops at the issuance of the visas which were fraudulently obtained.

## VI.   The Court Should Exclude or Restrict Evidence Concerning Motive or Good Faith Of The Defendants

Defendants may well attempt to introduce evidence or argue they acted in good faith and/or only had a good motive for their actions. However, the of criminal offenses charged in the Second Superceding Indictment are general intent crimes and, as such, the good faith defense is unavailable.

Admittedly, a criminal defendant has the right to have a judge or jury resolve disputed factual issues. Nonetheless, where the evidence, even if believed, does not establish the elements of a defense, the trial judge need not admit such evidence or allow its submission to the trier of fact. *United States v. Contento-Patchon*, **723 F.2d 691, 693 (9th Cir. 1984);** *United States v. Bifield,* **702 F.2d 342, 346 (2nd Cir.),** *cert. denied,* **461 U.S. 931 (1983);** *see United States v. Bailey*, **444 U.S. 394, 416-17 (1980).** A court can determine the admissibility of evidence relating to a proposed defense by pretrial motions or motions in limine. *United States v. Dorrell*, **758 F.2d 427, 430 (9th Cir. 1985).** "The sole question presented in such situations is whether the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense. If it is, then the trial court should exclude the defense and the evidence offered in support." *Id.* The Court has broad discretion in determining relevancy and evidentiary issues. Only where there appears to be clear

abuse of discretion will the Court of Appeals overturn the district court's evidentiary rulings. ***United States v. Cole,*** **670 F.2d at 37-38,** ***United States v. Castell,*** **584 F.2d at 89.**

Additionally, Federal Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible" at trial. Generally evidence introduced in a criminal trial should be strictly relevant to the specific offenses charged in the Indictment. ***Williams v. New York,*** **337 U.S. 241, 247 (1940);** ***United States v. Hall,*** **653 F.2d 1002 (5ᵗʰ Cir. 1981).** In ***United States v. Waldrip,*** **981 F.2d 799 (5ᵗʰ Cir. 1993)**, the Court of Appeals for the Fifth Circuit defined two requirements for evidence to be relevant:

> (1) the evidence must tend to prove the matter sought to be proved; and

> (2) the matter sought to be proved must be one that is of consequence to the determination of the action. Moreover, the matter sought to be proved must be part of the hypothesis governing the case. In a criminal case, the governing hypothesis consists of the elements of the offense charged and the *relevant defenses (if any)* raised to defeat criminal liability. (Emphasis added).

***Id.* at 806 (*citing United States v. Hall*, 653 F.2d at 1005).** The evidence of good faith and/or motive which defendant may seek to introduce is irrelevant to the elements of the charge in the Indictment or any *available, relevant* defense.

A "specific intent" crime is one in which the act was committed voluntarily and purposely with the specific intent to do something the law forbids, for instance in a mail/wire fraud charge where defendant must have acted with the intent to defraud. In other words, in such criminal offenses, the defendant must act not only with knowledge of what defendant is doing, but must do so with the objective of completing some unlawful act. ***United States v. Blair,*** **54 F.3d 639, 642 (10ᵗʰ Cir. 1995);** ***United States v. Hall,*** **805 F.2d 1410, 1420 (10ᵗʰ Cir. 1986).** Only in such cases, may a defendant's good faith belief that what he is doing is lawful become relevant.

On the other hand, a "general intent" crime requires only that the act was done voluntarily and intentionally, and not because of mistake or accident. ***Carter v. United***

*States,* **530 U.S. 255, 269 (2000).**   Generally, where a statute only prescribes the statutory *mens rea* as "knowingly, it is well settled that the statue only requires a finding of general intent for conviction.   *United States v. Bailey,* **444 U.S. at 405 (1980).**

### A.       Section 371 –  Conspiracy / Section 1546 - Visa Fraud

Section 371 only utilizes the term "knowingly." As such, there can be no dispute that the statutes require only general intent.  *United States v. Bailey,* **444 U.S. 394, 405 (1980).**   Additionally, while the crime of conspiracy requires the intent to advance or further the unlawful object of the conspiracy:

> [it] offers no textual support for the proposition that to be guilty of a conspiracy a defendant in effect must have known that his conduct violated federal law.  The statute makes it unlawful simply to "conspire ... to commit any offense against the United States."  A natural reading of these words would be that since one can violate a criminal statute simply by engaging in the forbidden conduct, a conspiracy to commit that offense is nothing more than an agreement to engage in the prohibited conduct.

*United States v. Feola*, **420 U.S. 671, 687 (1975)**.   Thus, the Government need not prove that a defendant intentionally violated a known legal duty, or "specific intent," in order to secure a conviction for conspiracy.  As such, evidence of defendants' good motive is irrelevant.

Likewise, the substantive charges of visa fraud (which is also an object of the conspiracy) require only the defendants to have acted knowingly.  As such, they too are only general intent crimes.

### 2.  Section 1957 - Money Laundering

The elements of an offense under section 1957 are only: (1) that the defendant knowingly engaged in a monetary transaction (or aided and abetted others to do so); (2) that the defendant knew the property involved derived from an unlawful activity; (3) that the money derived was in fact from an unspecified unlawful activity, and (4) that the property had a value greater than $10,000.  *United States v. Johnson,* **450**

F.3d 366 (8th Cir) 2006, *cert. denied* 127 S.Ct. 463 (2007).  Again, section 1957 only utilizes the term "knowingly."  As such, there can be no dispute that the statutes require only general intent.  A particular motive or cause that led defendants to attempt transfer of funds from one bank account to another is not material. *U.S. v. Norman*, **143 F.3d 375** (8th Cir. 1998)

A review of the intent elements of the counts of the Indictments shows no more than general intent offenses, and good faith is irrelevant to a general intent crime.  *See, e.g., United States v. Aguilar,* **883 F.2d 662, 672** (9th **Cir. 1989),** *cert. denied,* **111 S.Ct. 751 (1991); United States v. Washington, 705 F.2d 498, 493 (D.C. Cir. 1983)** (evidence of motive is not relevant to or probative on the issue of intent in the general intent crime of false statements); *United States v. Harris,* **25 F.3d 1275, 1279 (5th Cir. 1994)** (motive irrelevant in possession of a firearm and car jacking trial);*see United States v. Pomponio,* **429 U.S. 10, 11 (1976)** (per curium) (upholding district court instruction that good motive alone is never a defense where the act done or omitted is a crime).

Simply put, to argue motive and good faith in this case would be nothing short of seeking jury nullification, and as it wisely has been said:

> To encourage individuals to make their own determinations as to which laws they will obey and which they will permit themselves as a matter of conscience to disobey is to invite chaos.  No legal system could long survive if it gave every individual the option of disregarding with impunity any law which by his personal standard was judged morally untenable.

*United States v. Wiley,* **503 F.2d 106, 107 (8th Cir. 1974),** *quoting* **United States v. Moylan, 417 F.2d 1002, 1009 (4th Cir. 1969), cert. denied, 397 U.S. (1970).**

> A jury has no more "right" to find a "guilty" defendant "not guilty" that it has to find a "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power. Any arguably salutary functions served by inexplicable jury acquittals would be lost if that prerogative were frequently exercised; indeed, calling attention to that power could encourage the substitution of individual standards for openly developed community rule.

*United States v. Washington,* 705 F.2d 489, 494 ((D.C.Cor. 1983) (citations and emphasis omitted).

Based on the foregoing, the Government respectfully requests the Court prohibit defense counsel from any questioning concerning or arguing defendants' good motive or good faith, or arguing same to the jury in connection with the specified counts and, if such evidence should be offered in connection with other counts, that a limiting instruction be given.

## VII.   Restriction On Evidence Concerning Background Information On Defendants

In the absence of an assertion that a defendant will testify, there is no reasonable basis to believe that a variety of personal information about that defendant, even if relevant, will be elicited at trial.  If counsel cannot state at the beginning of the trial whether each defendant will testify, he or she cannot state that they reasonably expect to elicit the information.  Consequently, there will exist no reasonable basis for including it in their opening statements, and the Court should prohibit the statements from being made in the first place.

**CONCLUSION**

For the foregoing reasons, the Government's Motions In Limine should be granted.

Respectfully submitted,
JOHNNY SUTTON
UNITED STATES ATTORNEY

/s/

By:
J. BRANDY GARDES
Assistant U.S. Attorney
Calif. Bar No. 144770

WILLIAM F. LEWIS, JR.
Assistant U.S. Attorney
TX Bar No. 12314550
U.S. Attorney Office
700 E. San Antonio, Ste. 200
El Paso, Texas 79901
(915)534-6884

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of December, 2007, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System which will transmit notification of such filing to the following CM/ECF participant:

JOSEPH SIB ABRAHAM, JR.                    Attorney for Florita Tolentino
PO Box 512312
El Paso, TX 79951

RAY VELARDE, ESQ                           Attorney for Noel Tolentino
1216 Montana Ave
El Paso, Texas 79902

LUIS E. ISLAS                              Attorney for Angelica Tolentino
1216 Montana Ave
El Paso, Texas 7990e

                                   /s/_____
                                   J. Brandy Gardes,
                                   Assistant United States Attorney

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | **CRIMINAL NO EP-04-CR-2091KC** |
| **v.** | § | |
| **FLORITA CEDRO TOLENTINO,** | § | |
| **NOEL CEDRO TOLENTINO,** | § | |
| **ANGELICA TOLENTINO,** | § | |
| | | |
| **UNITED STATES OF AMERICA,** | § | **CRIMINAL NO EP-04-CR-2092KC** |
| **v.** | § | |
| **NOEL CEDRO TOLENTINO,** | § | |
| | | |
| **UNITED STATES OF AMERICA** | § | **CRIMINAL NO. 04-CR-2093KC** |
| **v** | § | |
| **NOEL CEDRO TOLENTINO,** | § | |

<u>**ORDER ON GOVERNMENT'S MOTIONS IN LIMINE**</u>

On this date came on to be considered the Government's Motions in Limine on Retrial. After argument by counsel for all parties and the Court having considered same, the Court is of the opinion that the following orders should be entered:

IT IS HEREBY ORDERED that the Government's Motion is hereby granted or denied as follows:

1.    Requesting the Court to conduct all voir dire examination in this cause, and directing counsel to submit any proposed voir dire questions or areas of questions to the Court for review outside the presence of the jury.

GRANTED _____ DENIED _____

2.      Excluding all defense exhibits not submitted to the Government

within the time limit imposed by the Court's prior Scheduling Order.

GRANTED _____ DENIED _____

3.      Restricting counsel from questioning or arguing certain evidence

and defense theories, including:

A.      Any information contained in the defense exhibits;

GRANTED _____ DENIED _____

B.      Any reference to potential sentences or consequences resulting

from conviction;

GRANTED _____ DENIED _____

C.      Restricting any reference to the events of September 11th;

GRANTED _____ DENIED _____

D.      Prohibiting counsel from arguing or eliciting evidence in connection

with a

1.  spoliation defense

GRANTED _____ DENIED _____

2.  due process defense and/or

GRANTED _____ DENIED _____

3.  selective prosecution defense; and

GRANTED _____ DENIED _____

4.  ignorance or mistake of law defense

GRANTED _____ DENIED _____

E.      Prohibiting counsel from eliciting testimony on the law and its

interpretation;

GRANTED _____ DENIED _____

2

F.     Prohibiting irrelevant evidence and/or evidence without factual foundation, including but not limited to irrelevant and incomplete defenses of;

1.  Similar contracts or arrangements

GRANTED _____ DENIED _____

2.  Course and scope of employment

GRANTED _____ DENIED _____

G.     Restricting and/or setting limits upon the introduction of character evidence whether through cross-examination or direct examination;

GRANTED _____ DENIED _____

H.     Disallowing evidence of specific acts of good character;

GRANTED _____ DENIED _____

I.     Prohibiting cross-examination as to immigration and other benefits given to witnesses as a result of the delays in this case; and

GRANTED _____ DENIED _____

J.     Prohibiting reference to the prior trial in this matter which ended in a mistrial.

GRANTED _____ DENIED _____

4.   Setting the order and scope of cross-examination;

GRANTED _____ DENIED _____

5.   Preventing counsel from arguing for jury nullification;

GRANTED _____ DENIED _____

6.   Restricting evidence of motive or good faith

GRANTED _____ DENIED _____

7.   Restricting evidence in connection with the background of the defendants.

GRANTED _____ DENIED _____

3

SO ORDERED this ___ day of January, 2008

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE